**SIGNED THIS: October 08, 2008**

_____
THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SIDNEY R. DOWACTER and ARLETHA K. ) | |
| DOWACTER, ) | No. 08-81220 |
| ) | |
| Debtors. ) | |

**O P I N I O N**

Before the Court is the objection filed by Charles E. Covey, Trustee (TRUSTEE), to the claim of exemption filed by Sidney R. Dowacter and Arletha K. Dowacter, the Debtors (DEBTORS).

**BACKGROUND**

The DEBTORS filed a voluntary petition for relief under the provisions of Chapter 7 of the Bankruptcy Code on May 7, 2008. According to the Statement of Affairs, the DEBTORS had operated a fabric and gift shop for several years, until the business was ended on April 19, 2008. Among the assets listed on the petition were a checking account at the Farmers State Bank in Astoria, held only in Arletha's name, listed as having a petition date balance of $22,304. The DEBTORS also listed a credit card machine, cash

register, printer, sweeper and inventory used in the business and collectively valued at $4,000. Those assets are listed as being solely owned by Arletha. The DEBTORS claimed an exemption of $1,019 in the property that had been used in the business under the wildcard exemption.

The DEBTORS turned over the funds in the checking account, which had been used in the business, to the TRUSTEE. Those funds included proceeds from the prepetition liquidation of business assets by the DEBTORS. After notice and with Court approval, the TRUSTEE sold the remaining personal property that had been used in the business ("remaining assets") for $3,000. The TRUSTEE objected to the DEBTORS' claim of exemption in the property that had been used in the business, as improper. The DEBTORS filed a response, alleging that Arletha did not claim an exemption in the remaining assets under the tools of the trade exemption because the business was closed prior to the bankruptcy filing. They argued that the characterization of the property as "business property" was no longer accurate and the claim of exemption under the wild card was proper. Alternatively, the DEBTORS contended that they should be allowed to assert an exemption in the remaining assets under the "tools of the trade" exemption and to "stack" that exemption on the wildcard exemption, which would result in an increase in the amount of the property which the DEBTORS have claimed as exempt.

A hearing was held on August 18, 2008. The TRUSTEE contended that the wild card exemption cannot be used to exempt business property, relying on the first sentence of the final paragraph of the personal property exemption statute which provides:

> The personal property exemptions set forth in this Section shall apply only to individuals and only to personal property that is used for personal rather than business purposes.

2

735 ILCS 5/12-1001. In response, the DEBTORS' position was two-fold. First, the DEBTORS asserted that the exemption under the wild card exemption was proper because the limitation relied upon by the TRUSTEE only prevents a debtor from claiming an exemption under the wild card in personal property used for business purposes other than implements, professional books, or tools of trade. In support of their position, the DEBTORS rely on this Court's earlier decision in *In re Adams*, 2003 WL 924724 (Bankr.C.D.Ill.), following the reasoning of Judge Ginsberg in *In re Allman*, 58 B.R. 790 (Bankr.C.D.Ill. 1986) and Judge DeGunther in *In re King*, 153 B.R. 229 (Bankr.N.D.Ill. 1993), and holding that a debtor could stack the wild card exemption on top of a tools of the trade exemption.

Alternatively, the DEBTORS contend that a claim of exemption may be made in the proceeds from the remaining property being held by the TRUSTEE under the wild card exemption because the remaining assets that were sold were formerly used as business property, relying on Judge Lessen's decision in *In re Gullo*, 187 B.R. 641 (Bankr.C.D.Ill. 1995). The debtor in *Gullo*, having sold his business prior to filing the petition, claimed an exemption in the balance of the purchase price remaining to be paid by the purchaser. Ruling that the limitation did not extend to proceeds from the sale of a business, Judge Lessen noted that the debtor was no longer engaged in any business and would be using the exempted funds for personal purposes. At the close of the hearing, the Court took the matter under advisement and the parties were given an opportunity to file briefs.

**ANALYSIS**

Illinois has "opted out" of the federal exemption scheme, limiting Illinois debtors to the exemptions allowed under Illinois law. The purpose of the exemption law is to

protect debtors and their families from destitution and to provide them the necessary shelter from creditors, thereby safeguarding their fresh start in bankruptcy. *In re Giffune*, 343 B.R. 883, 897 (Bankr.N.D.Ill. 2006). Because exemptions are an essential component of a debtor's fresh start, they are construed liberally in favor of the debtor. *Matter of Barker*, 768 F.2d 191 (7th Cir. 1985). Disputed claims of exemptions are governed by Federal Rule of Bankruptcy Procedure 4003. Pursuant to the Rule, the party objecting to the claim of exemptions has the burden of proving the exemptions are not properly claimed. Fed. R. Bankr. P. 4003(c).

In the brief which he filed after the hearing in this matter, the TRUSTEE denied that the remaining assets that he sold were "tools of the trade" which qualified for that exemption, adhering to his position that the assets were "business" assets which could not be claimed as exempt under the wild card exemption. In addition to their continued reliance on *Adams* and *Gullo*, the DEBTORS propose an amendment to their claim of exemptions to assert an exemption in the funds which they voluntarily turned over to the TRUSTEE, representing the balance in the business checking account.

The DEBTORS' uncertainty of where to play their wild card is due in part to their disregard of the fundamental principle that a debtor's right to claim an exemption is determined by the facts which existed on the petition filing date. *Fowler v. Shadel,* 400 F.3d 1016 (7th Cir. 2005); *In re Zibman,* 268 F.3d 298, 302 (5th Cir. 2001); *In re Govoni*, 289 B.R. 500, 504 (Bankr.D.Mass. 2002); *In re Owens*, 269 B.R. 794 (Bankr.N.D.Ill. 2001). On the date the DEBTORS filed their petition, Arletha had closed the doors on her shop and the property she retained could no longer be considered "tools of the trade." She listed herself as

4

"retired" and her only income is from social security. The DEBTORS are not entitled to claim an exemption under the "tools of the trade" exemption.[1]

Conceding as much for the most part, the DEBTORS nevertheless contend that they are entitled to claim the remaining assets exempt under the wildcard based on their characterization as "tools of the trade," seizing upon a statement made by this Court in *In re Adams,* holding that one of the debtors, temporarily employed in another line of work, could claim an exemption under both the tools of the trade exemption and the wildcard, in equipment which she had used in her former occupation because she intended to join her husband in the landscaping business as soon as they got back on their feet. In rejecting the trustee's argument that the wildcard exemption could not be used to exempt the excess equity in a tool of the trade because the exemption provision is limited to property used for personal purposes, this Court noted the general rule permitting the wildcard exemption to be "stacked" to exempt excess equity in property which has been claimed exempt under another exemption provision. Summarizing the holdings of prior decisions supporting that result, this Court stated that they held "that the wildcard exemption may be stacked with the tools of the trade exemption, construing the limiting condition to mean only that personal property that is used for business purposes is not exemptible unless it is an implement, professional book, or tool of the trade, in which case it is exemptible as such and, additionally, under the wildcard provision." *Adams*, at *3.

---

[1] Given this result, the Court need not determine whether the credit card machine, cash register, printer, sweeper and inventory were "tools of the trade." Recently, in *In re Taylor*, 2008 WL 1805384 (Bankr.S.D.Ill. 2008), Judge Kenneth Meyers, noting the lack of definition of the term under Illinois law, concluded that the exemption covers "small objects that a debtor relies on in his work."

The DEBTORS misinterpret that statement, asserting that Arletha can claim the remaining assets under the wildcard even though they do not qualify for a tools of the trade exemption. "Stacking" of the wildcard requires the allowance of a separate exemption on which the wildcard may rest. Accepting the DEBTORS' position would permit any and all property to be exempted under the wildcard, essentially writing out the limiting condition of the statute. The statute is restricted to the exemption of "personal property" and the limiting condition further restricts the scope of the statute to personal property used for personal purposes and not for business purposes.

Reconciling the "seemingly hopeless" contradiction between the tools of the trade exemption which authorizes the exemption of property used for business purposes and the broad language of the limiting condition which prohibits an exemption in business property, Judge Ginsberg stated:

> There is no evidence that the Illinois legislature intended to repeal the tools of trade exemption by limiting exemptions to property used for personal purposes. All indications are to the contrary. The most logical reading of the amendment to § 12-1001(h) is that it prevents a debtor from claiming a wild card exemption in personal property used for business other than implements, professional books, or tools of trade. It constrains logic to interpret the amendment to prevent a debtor from claiming excess equity in tools of trade as exempt under the wild card provision. The stacking of such exemptions protects debtors and their families by facilitating their financial rejuvenation. Exemption statutes are not designed to benefit creditors, but rather are intended to prevent debtors from being completely deprived of the means of supporting their families and from becoming public charges. *Barker*, 768 F.2d at 195. The legislature in § 12-1001(d) specifically deemed tools of trade as essential in effectuating that purpose. The wild card exemption affords the debtor additional protection. Combining the two exemptions enhances a debtor's opportunity to realize self-sufficiency. Only specific statutory language or clear legislative intent can overcome this result.

*In re Allman,* 58 B.R. at 793. Neither *Allman, King,* nor *Adams* involved a debtor who was not entitled to claim a tools of the trade exemption but sought to claim an exemption under the wildcard. The DEBTORS' position is without support.

The DEBTORS' reliance on *In re Gullo* in support of their contention that an exemption may be claimed in the proceeds from the sale of the remaining assets is also unavailing. In *Gullo*, the DEBTOR had sold his business before filing the bankruptcy and claimed an exemption under the wildcard on the monies to be paid by the purchaser as of the date of the filing of the petition. The court held that the limiting condition of the exemption statute did not apply to proceeds from the sale of a business. In the present case, the TRUSTEE sold the remaining assets after the petition was filed. On the date the DEBTORS filed their petition, which is the determinative date for exemption purposes, Arletha owned the remaining assets and, for the reasons stated above, cannot claim them as exempt under either the tools of the trade exemption or the wildcard.

In their brief, the DEBTORS put forth yet another alternative – that Arletha be allowed to amend her claim of exemptions to assert an exemption under the wildcard in funds held in the checking account which was formerly used in the business and voluntarily turned over to the TRUSTEE when the petition was filed.[2] Such a claim of exemption would appear to be proper. The funds in the bank account, representing proceeds from the sale of business property, did not retain their character as "business" property upon the termination of the business. Rather, as the sole proprietor, Arletha had

---

[2] This Court notes that the amount of Arletha's unused wildcard exemption is $909.50, based on the exemptions claimed in jointly owned property. Sidney is entitled to claim the full value of the boat as exempt and only Arletha is entitled to assert a claim of exemption in the property used in the business.

the unfettered use of the funds. Since she was no longer in business when the bankruptcy was filed, the funds could no longer be used for "business" purposes.

For the foregoing reasons, the TRUSTEE'S objection to the DEBTORS' claim of exemptions is sustained and the DEBTORS will be given 14 days to amend Schedule C. This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###